UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

<u>CIVIL MINUTES—GENERAL</u>

**Case No.** CV 19-7965-MWF (SSx)                **Date:  January 26, 2021**
Title:        A.P. et al. v. Pasadena Unified School District

Present:   <u>The Honorable MICHAEL W. FITZGERALD, U.S. District Judge</u>

          Deputy Clerk:                        Court Reporter:
          Rita Sanchez                      Not Reported

          Attorneys Present for Plaintiff:       Attorneys Present for Defendant:
          None Present                     None Present

**Proceedings (In Chambers):**   ORDER RE: PLAINTIFFS' MOTION FOR
                                     SUMMARY JUDGMENT [27]; DEFENDANT'S
                                     MOTION FOR SUMMARY JUDGMENT [29]

Before the Court are two motions:

The first is Plaintiffs A.P. ("Student"), by and through her guardians ad litem V.P. and B.P., and V.P. and B.P.'s ("Parents") Motion for Summary Judgment (the "P MSJ"), filed on October 15, 2020.  (Docket No. 27).  Defendant Pasadena Unified School District (the "District") filed an opposition (the "P MSJ Opp.") on November 23, 2020.  (Docket No. 36).  Plaintiffs filed a reply (the "P MSJ Reply") on November 30, 2020.  (Docket No. 29).

The second is the District's Motion for Summary Judgment (the "D MSJ"), filed on October 15, 2020.  (Docket No. 29).  Plaintiffs filed an opposition (the "D MSJ Opp.") on November 23, 2020.  (Docket No. 34).  The District filed a reply (the "D MSJ Reply") on November 30, 2020.  (Docket No. 38).

The Court has read and considered the papers filed in connection with the Motions and held a telephonic hearing on December 18, 2020, pursuant to the General Order 20-09 and the Continuity of Operations Plan ("COOP"), effective December 9, 2020, through and including January 8, 2021, arising out of the COVID-19 pandemic.

For the reasons that follow, Plaintiffs' Motion is **GRANTED** and the District's Motion is **DENIED** as to the Child Find and post-secondary assessment issues.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-7965-MWF (SSx)                    Date:  January 26, 2021
Title:      A.P. et al. v. Pasadena Unified School District

Plaintiff's Motion is **DENIED** and the District's Motion is **GRANTED** as to the placement offer issue.  The Court defers ruling on the Motions with respect to reimbursement and Plaintiffs are **ORDERED** to file a supplemental brief on or before **March 1, 2021**, advocating for an appropriate reimbursement amount in accordance with this Order's factual findings and legal conclusions.

## I.    BACKGROUND

Plaintiffs seek relief for the District's alleged violations of Student's educational rights under the Individuals with Disabilities Education Act ("IDEA"), claiming such violations denied Student of a free appropriate public education ("FAPE").  This action is, functionally, an appeal of the decision of the administrative law judge ("ALJ") denying Plaintiffs such relief.  *See Capistrano Unified Sch. Dist. v. Wartenberg By & Through Wartenberg*, 59 F.3d 884, 892 (9th Cir. 1995) ("Though the parties may call the procedure a 'motion for summary judgment' in order to obtain a calendar date from the district court's case management clerk, the procedure is in substance an appeal from an administrative determination, not a summary judgment.").

### A.    Legal Standard

The IDEA's primary purpose is to assure that all children with disabilities have available to them . . . a free appropriate public education which emphasizes special education and related services designed to meet their unique needs[.]"  *Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1469 (9th Cir. 1993) (internal citations omitted).  Pursuant to the IDEA, a FAPE is defined as:

> [S]pecial education and related services that:  (A) have been provided at public expense, under public supervision and direction, and without charge; (B) meet the standards of the State educational agency; (C) include an appropriate preschool, elementary, or secondary school education in the State involved; and (D) are provided in conformity with the individualized education program required under section 1414(a)(5) of this title.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-7965-MWF (SSx)                    Date:  January 26, 2021
Title:      A.P. et al. v. Pasadena Unified School District

20 U.S.C. § 1401(a)(18).

The IDEA requires schools to comply with both substantive and procedural requirements in providing a FAPE.  The substantive requirements include

> the development of an individualized education program ("IEP") for each child with a disability. . . . The IEP document must contain:  information regarding the child's present levels of performance; a statement of annual goals and short-term instructional objectives; a statement of the specific educational services to be provided and the extent to which the child can participate in regular educational programs; and objective criteria for measuring the student's progress.

*Ojai*, 4 F.3d at 1469 (internal citations omitted).  The Supreme Court recently clarified that "[t]o meet its substantive obligation under the IDEA, a school must offer an IEP reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances."  *M.C. by & through M.N. v. Antelope Valley Union High Sch. Dist.*, 858 F.3d 1189, 1201 (9th Cir. 2017) (quoting *Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1*, 137 S. Ct. 988, 1000 (2017)).  A school must take into consideration not only a child's academic needs, but also her "social and emotional needs that affect academic progress, school behavior, and socialization."  *Cty. of San Diego v. California Special Educ. Hearing Office*, 93 F.3d 1458, 1467 (9th Cir. 1996).

In addition to the substantive requirements, "the IDEA also includes procedural safeguards which, if violated, may prevent a child from receiving a FAPE."  *Amanda J. v. Clark Cnty. Sch. Dist.*, 267 F.3d 877, 882 (9th Cir. 2001).  "Not every procedural violation . . . is sufficient to support a finding that the child in question was denied a FAPE."  *Id.* at 892.  Rather, procedural inadequacies constitute a denial of a FAPE where they "result in the loss of educational opportunity, or seriously infringe [a student]'s parents' opportunity to participate in the IEP formulation process[.]"  *Id.*

"[P]arents have the right to present complaints with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-7965-MWF (SSx)                    Date:  January 26, 2021
Title:       A.P. et al. v. Pasadena Unified School District

provision of [a FAPE] to such child." *Id.*  After lodging a complaint, parents are entitled to a due process hearing conducted by an administrative agency, as established by state law.  *Id.*  If the parents or the school disagree with the administrative decision, either party may bring a civil action in state or federal court.  *Id.* (internal citations and quotations omitted); *see also* 20 U.S.C. § 1415(i)(2)(A) (stating that a party aggrieved by the factual findings and decision rendered after an administrative due process hearing has the right to file a civil action in court).

A reviewing court evaluates the ALJ's conclusions of law and mixed conclusions of law and fact *de novo*.  *Orange Cnty. Dep't of Educ. v. California Dep't of Educ.*, 668 F.3d 1052, 1055 n.3 (9th Cir. 2011).  The review, however, is a modified *de novo* standard, which gives "due weight" to the ALJ's conclusions where it demonstrates "careful, impartial consideration of all the evidence" and "sensitivity to the complexity of the issues presented."  *Ojai*, 4 F.3d at 1476.  This "due weight" standard thus prevents a district court from imposing its own view of educational policy on the states.  *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176, 206 (1982).  "The burden of proof in the district court rest[s] with . . . the party challenging the administrative decision."  *Hood v. Encinitas Union Sch. Dist.*, 486 F.3d 1099, 1103 (9th Cir. 2007).

## B.  **Factual and Procedural Background**

When appealing an ALJ's decision under the IDEA, which functionally is what this action is, parties are entitled to present new evidence.  *Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1471 (9th Cir. 1993) ("the IDEA provides that 'the court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate'") (quoting 20 U.S.C. § 1415).  Here, the parties have opted to rely on the administrative record.  (*See generally* P MSJ, D MSJ).

In August 2017, Student enrolled in the District at Pasadena High School ("PHS") as a tenth grader.  (Administrative Record ("AR") at 506).  Student had

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

<u>CIVIL MINUTES—GENERAL</u>

**Case No.  CV 19-7965-MWF (SSx)**          **Date:  January 26, 2021**
Title:      A.P. et al. v. Pasadena Unified School District

attended two different private high schools for ninth grade; she was asked to leave the first school after exhibiting severe perfectionist anxiety, depression, and school refusal. (*Id.* at 798-800, 1080-1084).  Parents chose to enroll Student at their home school district in hopes of finding a solution for Student's educational needs. (*Id.* at 1087-1088).  Student had never received special education services. (*Id.* at 507).  The following chart includes the events and dates relevant to this action.

| Date | Event |
|---|---|
| August 14, 2017 | Student began attending PHS.  (AR at 517) |
| September 19, 2017 | PHS counselor Minh Tran held a 504 meeting with Student, Parents, a few of Student's teachers, and Dr. Taylor and Dr. Leach, Student's treating psychologists retained by Parents. (AR at 803, 1178).  The psychologists shared that Student suffers from anxiety and major depressive disorders, and is "twice-exceptional," meaning she is both intellectually gifted and has learning disabilities. (*Id.* at 802, 1185-1186).

The 504 Evaluation noted that although Student had been excelling academically, she also has learning disabilities that substantially limit her major life activities, and expressly stated that her disabilities "may result in high stress, inability to manage and to engage in schoolwork." (*Id.* at 332, 334).

Student received a 504 Plan which allowed her as-needed accommodations like extra time on assignments. (*Id.* at 337). |
| September 20, 2017 – December 21, 2017 | Student began to engage in school refusal due to her worsening anxiety and depression and was absent a total of twenty-eight times during the fall semester.  The District sent Parents numerous warnings about Student's frequent truancy and tardiness. (*Id.* at 338-342, 517). |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-7965-MWF (SSx)                    Date:  January 26, 2021
Title:      A.P. et al. v. Pasadena Unified School District

| | |
|---|---|
| | Student failed to attend several final exams and her grades declined in nearly all subjects.  (*Id.* at 396, 1243-1247, 1263). |
| January 1, 2018 | Student attempted suicide and was subsequently hospitalized.  (*Id.* at 821-822, 1096).  Parents informed the District of Student's suicide attempt.  (*Id.* at 823). |
| January 10, 2018 | The District, for the first time, proposed to assess Student for special education eligibility.  (*Id.* at 513-514).  Parents agreed to a psychoeducational assessment of Student.  (*Id.*). |
| January 26, 2018 | At the recommendation of the District, Student enrolled at the Center for Independent Study ("CIS"), a District independent study program located on the PHS campus.  (*Id.* at 516). <br><br> While at CIS, Student continued to engage in school refusal, failed to complete most of her assignments, and suffered from anxiety, skin picking, and depression.  (*Id.* at 343-344, 830-834). |
| March 23, 2018 | Parents provided the District with written notice of their intention to unilaterally place Student at Bridges Academy ("Bridges"), a school which specializes in educating students with twice-exceptional profiles.  (*Id.* at 346, 681). |
| April 9, 2018 | Student began attending Bridges.  (*Id.* at 346, 863). |
| April 27, 2018 | The District held an Individualized Education Program ("IEP") meeting with Parents and determined that Student was eligible for special education services under the category of emotional disturbance.  (*Id.* at 588, 605). |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-7965-MWF (SSx)                Date:  January 26, 2021
Title:      A.P. et al. v. Pasadena Unified School District

| | |
|---|---|
| | For school placement, the District stated that Student could either continue attending CIS or enroll in a non-public school ("NPS").  (*Id.* at 605-606). |
| | A District NPS coordinator who had knowledge of Student's history discussed two NPS options in particular:  Hillside School and Learning Center and STEM-3 Academy.  (*Id.* at 606, 851-852, 1395-1397). |
| | The written IEP offered NPS as an option, but did not name any specific schools.  (*Id.* at 600-603). |
| | In addition to other services, the written IEP offered Student: sixty minutes of career awareness services per year, and sixty minutes of vocational assessment, counseling, guidance, and career assessment per year.  (*Id.* at 600-601). |
| May 14, 2018 | After visiting both Hillside and STEM-3, Parents notified the District that neither school was appropriate and that they intended to keep Student enrolled at Bridges, where she was making significant progress.  (*Id.* at 392, 853-858). |
| July 3, 2018 | The District notified Parents that it would not fund Student's placement at Bridges and recommended that an IEP be reconvened to discuss additional NPS options and services unavailable to Student at Bridges.  (*Id.* at 613-615). |
| November 27, 2018 | Parents filed a request for an administrative due process hearing with the California Office of Administrative Hearings ("OAH"), alleging that the District violated the IDEA on fourteen separate grounds, and thereby denied Student a free |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-7965-MWF (SSx)                Date:  January 26, 2021
Title:      A.P. et al. v. Pasadena Unified School District

|  | appropriate public education ("FAPE").  (Complaint ¶ 41 (Docket No. 2)). |
|---|---|
| April 9, 10, 11, 15, and 16, 2019 | The ALJ held hearing.  (*Id.* ¶ 42). |
| June 17, 2019 | The ALJ issued a decision in favor of the District, denying Student relief on all grounds.  (*Id.* ¶ 43). |
| September 13, 2019 | Plaintiffs initiated this action.  (*See generally id.*). |

Plaintiffs assert that the District denied Student a FAPE by failing to:

1) assess Student in a timely manner for special education services, in violation of the District's "Child Find" obligation;

2) assess Student for post-secondary transition and provide an appropriate and individualized post-secondary transition plan in the April 27, 2018 IEP; and

3) make a clear offer of placement in the April 27, 2018 IEP.

(Complaint ¶ 44).  Plaintiffs seek reversal of the ALJ's decision as to these three issues and seek reimbursement for Student's tuition at Bridges Academy and related costs for transportation, psychological counseling services, and private postsecondary career transition services.  (P MSJ at 25).

## C.      The ALJ's Decision

In the administrative due process hearing, Plaintiffs argued that the District denied Student a FAPE by failing to:  (1) assess Student in a timely manner for special education services, in violation of the District's child find obligation; (2) assess

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-7965-MWF (SSx)                    Date:  January 26, 2021
Title:       A.P. et al. v. Pasadena Unified School District

Student in all areas of known or suspected disability; (3) make a clear and appropriate offer of placement in the April 27, 2018 IEP; (4) offer appropriate and individualized services and support plans in the April 27, 2018 IEP; and (5) provide Parents with prior written notice regarding Parents' request at the April 27, 2018 IEP team meeting as to eligibility and school placement.  (*Id.* ¶ 41).

ALJ denied Student relief on all grounds.  (*Id.* ¶ 43).  The ALJ's findings and conclusions relevant to this action are discussed below.

### 1.      Child Find

Plaintiffs asserted that the District violated its Child Find obligation by failing to assess Student between September 19, 2017, and January 10, 2018, as the District became aware of Student's depression, anxiety, and learning disability at the 504 meeting on September 19, 2017.  (ALJ Opinion ¶ 7 (AR at 696)).  The ALJ disagreed.

 The ALJ determined that the District's child find obligation was not triggered until January 10, 2018, when the District was informed of Student's January 1, 2018 suicide attempt.  (*Id.* ¶¶ 13, 19 (AR at 697)).  The ALJ reasoned that, as of the 504 meeting on September 19, 2017, Student had "excellent grades and attendance" and thus the District "had no reason to suspect at that time that Student had a disability that required special education and related services so that Student could access the curriculum."  (*Id.* ¶ 13 (AR at 697)).  In support, the ALJ referenced the testimony of Student's math teacher, who "did not consider Student to be a candidate for a 504 Plan" because of Student's exemplary performance.  (*Id.* ¶ 13 (AR at 697)).

Although the ALJ expressly noted that Student's school attendance "began to deteriorate" around the time of the 504 meeting, the ALJ determined that Student's absences and tardiness had not triggered the District's Child Find obligation because: (1) Parents did not discuss Student's declining emotional status and mental state with anyone at the District; and (2) Student continued to receive As, Bs, and Cs and "performed well" when she ***did*** attend school.  (*Id.* ¶¶ 15, 16 (AR at 698)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-7965-MWF (SSx)                    Date:  January 26, 2021
Title:      A.P. et al. v. Pasadena Unified School District

The ALJ concluded that because Student had demonstrated that she could
function well under a 504 plan, the District was entitled to wait for a reasonable
amount of time after implementing the 504 accommodations to see whether they were
sufficient to meet Student's needs.  (*Id.* ¶ 17 (AR at 698)).  In support, the ALJ cited
California Education Code section 56303, which provides that a student "shall be
referred for special educational instruction and services only after the resources of the
regular education program have been considered and, where appropriate, utilized."  (*Id.*
¶ 12 (AR at 697)) (citing Ed. Code § 56303).

## 2.    Post-secondary transition assessment and plan

Plaintiffs argued that the District committed a procedural violation of the IDEA
by failing to assess Student for transitional services, since she was 16 years old when
the District developed its assessment plan on January 10, 2018.  (ALJ Opinion ¶ 63
(AR at 708)).  Plaintiffs also argued that the transition plan in the April 27, 2018 IEP
was vague, insufficient, and not individualized to Student and her unique needs.  (*Id.* ¶
64 (AR at 708)).

The ALJ agreed with Plaintiffs that the District did not conduct an age
appropriate transition assessment of Student, either formally or informally.   (*Id.* ¶ 68
(AR at 709)).  However, the ALJ concluded that this procedural violation was harmless
because the content of the individual transition plan included in Student's April 27,
2018 IEP was "appropriate."  (*Id.* ¶¶ 69, 75 (AR at 709)) (citing *M.M. v. New York City
Dept. of Education*, 655 Fed. App'x 868 (2d Cir. 2016)).

The ALJ noted that the transition plan:  (1) referenced Student's desire to be an
actress; (2) stated specific parameters and goals, including requiring Student to
research three careers, write two essays, and share one essay; and (3) offered group
career awareness services for sixty minutes per year, and individual vocational
assessment, counseling, guidance, and career assessment services for sixty minutes per
year.  (*Id.* ¶ 71 (AR at 710)).  The ALJ determined that this transition plan was
appropriate and sufficiently individualized for Student because it encouraged her to

---

**CIVIL MINUTES—GENERAL                                    10**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-7965-MWF (SSx)                    Date:  January 26, 2021
Title:       A.P. et al. v. Pasadena Unified School District

explore a range of careers and interests, rather than limiting her focus to the
"ambitious" goal of acting.  (*Id.* ¶ 72 (AR at 710)).

Additionally, the ALJ expressly noted that the plan did not include any goals
with respect to independent living.  (*Id.* ¶ 70 (AR at 710)).  However, the ALJ
dismissed this omission as harmless after concluding that Student did not have deficits
in adaptive or living skills, "except during bouts of serious depression or anxiety, when
she temporarily neglected her grooming."  (*Id.*).

The ALJ concluded that, taken in its entirety, the IEP was "reasonably
calculated" to enable Student to garner educational benefits, and therefore did not deny
Student a FAPE.  (*Id.* ¶ 74 (AR at 710)) (citing *Lessard v. Wilton-Lyndeborough Coop.
School Dist.*, 518 F.3d 18, 25, 30 (1st Cir. 2008)).

### 3.      Offer of school placement

Plaintiffs argued that the District deprived Parents of the ability to participate
meaningfully in the IEP process by failing to offer a specific nonpublic school
placement in the April 27, 2018 IEP.  (ALJ Opinion ¶ 76 (AR at 711)).  The ALJ
disagreed, holding that the District was not required to specify a particular school at
which services would be rendered.  (*Id.* ¶ 83 (AR at 713)) (citing *Rachel H. v. Dept. of
Ed., State of Hawaii*, 868 F.3d 1085 (9th Cir. 2017)).

The ALJ further determined that, although Parents decided to keep Student at
Bridges, Parents meaningfully participated in the IEP discussion of the nonpublic
schools and knew which specific nonpublic schools the District suggested.  (*Id.* ¶ 84
(AR at 713)) (stating that "no evidence" supported a finding that "Parents were
materially confused" as to the discussion of placement, as Mother's testimony on this
issue "was not persuasive").

Accordingly, the ALJ concluded that the District's offer of placement did not
deny Student a FAPE.  (*Id.* ¶ 86 (AR at 714)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-7965-MWF (SSx)                    Date:  January 26, 2021
Title:      A.P. et al. v. Pasadena Unified School District

## III.  **DISCUSSION**

Plaintiffs contend that the District deprived Student of a FAPE in three ways:
(1) by failing to comply with its "Child Find" obligation; (2) by failing to conduct a
post-secondary transition assessment and failing to offer appropriate post-secondary
transition services in the April 27, 2018 IEP; and (3) by failing to make a specific offer
of school placement in the April 27, 2018 IEP.  (P MSJ at 7-24).

### A.      **Whether the District Violated its Child Find Obligation**

Plaintiffs argue that the District violated its child find obligation by failing to
assess Student for special education services between September 19, 2017, and January
10, 2018.  (P MSJ at 7-14).  The District contends that it was not on notice of facts
indicating that Student was suffering from a disability until January 10, 2018, after
learning of her suicide attempt.  (D MSJ at 12-17).

"States [] have a 'child-find' obligation under the IDEA to identify, locate, and
evaluate all children who may require special education and related services."
*McIntyre v. Eugene Sch. Dist. 4J*, 976 F.3d 902, 910 (9th Cir. 2020) (citing 20 U.S.C.
§§ 1412(a)(3), (7), 1414(a)-(c); *see also Timothy O. v. Paso Robles Unified Sch. Dist.*,
822 F.3d 1105, 1110 (9th Cir. 2016)).  The obligation toward a specific child is
triggered when there is knowledge of, or reason to suspect a disability.  *Dep't of Educ.,
State of Hawaii v. Cari Rae S.*, 158 F. Supp. 2d 1190, 1195 (D. Haw. 2001).  The
threshold for suspecting that a child has a disability is relatively low.  *Id.* at 1195.  "[A]
disability is 'suspected,' and therefore must be assessed by a school district, when the
district has notice that the child has displayed symptoms of that disability."  *Timothy
O.*, 822 F.3d at 1119.   For example, "the informed suspicions of parents, who may
have consulted outside experts, trigger the requirement to assess, even if the school
district disagrees with the parent's suspicions[.]"  *Id.* at 1120 (quoting *Pasatiempo by
Pasatiempo v. Aizawa*, 103 F.3d 796 (9th Cir. 1996)) (internal alterations omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-7965-MWF (SSx)                Date:  January 26, 2021
Title:      A.P. et al. v. Pasadena Unified School District

The ALJ's conclusion that the District was not on notice of Student's disability as of September 19, 2017, does not warrant "due weight," as it exhibits a lack of "sensitivity to the complexity of the issues presented." *See Ojai*, 4 F.3d at 1476.

During the 504 meeting on September 19, 2017, the District acquired actual knowledge that Student had displayed symptoms of an emotional disturbance disability.  Two psychologists retained by Parents shared with the District that they had diagnosed Student with a social anxiety disorder and depression, which were trigged by stress due to pressure from school and would result in Student's school avoidance and inability to manage and engage in schoolwork.  (*See* AR at 334).  The District's 504 Report expressly acknowledged that Student "ha[s] a potentially limiting mental or physical disability" that "substantially limit[s] a major life activity."  (*Id.*).

The District was not entitled to ignore plain evidence of Student's disability merely because Student had good grades and attendance during the first month of school, as the requirement to assess is triggered "when the district has notice that the child ***has displayed*** symptoms of that disability."  *See Timothy O.*, 822 F.3d at 1119 (emphasis added).  Although Student was not presently suffering from an acute anxious or depressive episode resulting in school refusal, the District nevertheless had notice that Student ***had suffered*** and ***would in the future suffer*** from such episodes while under increased stress and anxiety due to overwhelming workload or pressure in school.  (*See* AR at 334).  Nor was the District relieved of its duty to assess Student merely because Student's math teacher did not believe that Student was eligible for disability accommodations.  *See Timothy O.*, 822 F.3d at 1119 ("School districts cannot circumvent [their] responsibility [to assess a child with a suspected disability] by way of informal observations, nor can the subjective opinion of a staff member dispel such reported suspicion.").

Additionally, given Student's unique profile, it was improper for the ALJ to conclude that because of Student's exemplary grades during the one-month period between the start of the school year and the September 19, 2017 meeting, the District "had no reason to assess Student for special education."  (*See* ALJ Opinion ¶ 14 (AR at

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-7965-MWF (SSx)                 Date:  January 26, 2021
Title:        A.P. et al. v. Pasadena Unified School District

697)).  Rather, "the fact that [Student] was able to achieve academically should have been measured in light of h[er] considerable intellectual potential."  *G.D. ex rel. G.D. v. Wissahickon Sch. Dist.*, 832 F. Supp. 2d 455, 466 (E.D. Pa. 2011) (holding that district failed to look beyond student's cognitive potential or academic progress in evaluating student's symptoms of a disability) (citation and internal quotation marks omitted).

During the September 19, 2017 meeting, the District was informed of Student's twice-exceptionality, meaning that she was highly intelligent and excelled in school despite also suffering from learning and emotional disabilities.  (AR at 802).  Student's grades as of that date demonstrated only that Student was not presently under conditions triggering her disability, not that her disability did not exist.  It should not have been surprising that Student's grades were excellent given Student's intellectual capabilities and the fact that it was still the beginning of the school year, before Student faced the anxiety and stress of midterms and final exams.  Accordingly, the ALJ "erred in relying on [Student's] overall academic achievements without assessing the relevance of such achievements to her [potential disability]."  *Doe*, 832 F.3d at 81 (reversing and remanding district court's decision affirming student's ineligibility for special education because of her strong academic performance); *see also Indep. Sch. Dist. No. 283 v. E.M.D.H.*, 960 F.3d 1073, 1083 (8th Cir. 2020) (rejecting district's argument that student is "simply too intellectually gifted to qualify for special education" and holding that "the District's child-find obligation was not suspended because of [Student's] innate intelligence").

At the hearing, the District argued that this conclusion would improperly prohibit schools from relying upon students' success in school and force schools to perform potentially unnecessary assessments.  The District's slippery slope argument is unpersuasive.  This Order does not stand for the proposition that schools must ignore or can never rely upon a Student's success in school when evaluating whether their Child Find obligation is triggered.  Rather, schools must view a child's academic performance in the context of other information they know about the child.  *See Doe v. Cape Elizabeth Sch. Dist.*, 832 F.3d 69, 81 (1st Cir. 2016) (stating that in the eligibility

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-7965-MWF (SSx)                    Date:  January 26, 2021
Title:       A.P. et al. v. Pasadena Unified School District

context, "a disability must be determined 'on a case-by-case basis, depending on the unique needs of a particular child and not based only on discrepancies in age or grade performance in academic subject areas'") (quoting Letter from Alexa Posny, Director of the Office of Special Education Programs, U.S. Department of Education, to Catherine D. Clarke, Director of Education and Regulatory Advocacy, American Speech and Hearing Association, U.S. Dep't of Educ. (Mar. 8, 2007)).  As noted above, the District was on notice that when Student was not experiencing academic stress, a key trigger of her emotional disability, Student was intellectually gifted and performed well academically.  Her one-month-long record of good grades and attendance should have been assessed in this specific context.

     At the hearing, the District argued that school districts are not mental health providers and have no obligation to assess students who are having problems at home that do not manifest at school.  This argument mischaracterizes the information shared with the District at the 504 meeting, which made clear that Student's disability was not limited to causing "problems at home," but — as recently as the previous school year — had a severe and profound impact on Student's ability to attend school.  Moreover, this argument ignores that school districts have an obligation to educate "'a wide spectrum of handicapped children,' including those whose handicap is not cognitive[,]" but emotional or psychological.  *E.M.D.H.*, 960 F.3d at 1082 (holding that district breached its Child Find obligation where it knew student was suffering from mental health issues that impacted her ability to attend school but did not assess student for special education because she had above-average intellectual ability) (quoting *Rowley*, 458 U.S. at 202); *see also Indep. Sch. Dist. No. 284 v. A.C., by & through her Parent, C.C.*, 258 F.3d 769, 777-78 (8th Cir. 2001) (holding that student was entitled to special education benefits due to her psychological and emotional problems even though she "ha[d] no learning disability" and "tests reveal[ed] her to be a shrewd problem solver")).  Keeping Student's stress and anxiety levels low was key to ensuring that Student could continue to attend school and perform well academically; the District should have referred Student for an evaluation to determine the best way to go about meeting Student's specific needs in accordance with her disability.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-7965-MWF (SSx)                    Date:  January 26, 2021
Title:        A.P. et al. v. Pasadena Unified School District

Additionally, even if the District's obligation were not triggered at the 504 meeting, it was undoubtedly triggered shortly thereafter once Student began to miss school with alarming frequency.  At the hearing, the District argued that although the District sent Parents notice of Student's frequent truancy and tardiness, the Child Find obligation was not triggered because Parents never informed the District that Student's disability was the cause of her absences.  The District characterized the situation thusly: "Parents bear some responsibility to cooperate with a district."

Accepting this contention would impermissibly shift the Child Find obligation from schools to parents.  *See Krawietz by Parker v. Galveston Indep. Sch. Dist.*, 900 F.3d 673, 677 (5th Cir. 2018) (rejecting district's attempt to blame student's family for delayed assessment, explaining that "the IDEA imposes the Child Find obligation upon school districts, not the parents of disabled students").  Here, the District knew that Student suffered from emotional disabilities which would result in school refusal when triggered and knew that her absences and tardiness increased rapidly and significantly.  "There cannot have been a burden on [Student] or h[er] parents to come forward, at that time, with evidence the [disability] was the cause of [her] problems; that would be placing the burden on [Student] and h[er] family for identifying h[er] as a student with a disability, precisely what the Child Find duty forbids."  *Culley v. Cumberland Valley Sch. Dist.*, 758 F. App'x 301, 306 (3d Cir. 2018) (holding that district violated its Child Find obligations where it knew of student's disability but did not investigate student's needs under the IDEA).

The ALJ also erred by concluding that the District was entitled under the IDEA to wait for a reasonable period of time after implementing the 504 Plan to see whether it worked.  (*See* ALJ Opinion ¶ 17 (AR at 698)).  In support of this conclusion, the ALJ cited California Education Code section 56303, which provides that a student "shall be referred for special educational instruction and services only after the resources of the regular education program have been considered and, where appropriate, utilized."  (*See* ALJ Opinion ¶ 12 (AR at 697)).  The Court agrees with Plaintiffs that the plain language of section 56303's text suggests that it does not govern assessments.  (*See* P MSJ at 14).  But even if it did, California law could not override an express

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-7965-MWF (SSx)                Date:  January 26, 2021
Title:        A.P. et al. v. Pasadena Unified School District

requirement of the IDEA.  *See Hacienda La Puente Unified Sch. Dist. of Los Angeles v. Honig*, 976 F.2d 487, 495 (9th Cir. 1992) ("[o]nce California chose to participate under the IDEA, the state became obligated 'to establish and maintain procedures in accordance with [the IDEA]'").  Accordingly, the fact that the District provided Student with 504 accommodations did not obviate the need for any special education assessment.  *Simmons v. Pittsburg Unified Sch. Dist.*, No. 4:13-CV-04446-KAW, 2014 WL 2738214, at *9 (N.D. Cal. June 11, 2014) (citing *Yankton Sch. Dist. v. Schramm*, 93 F.3d 1369, 1376 (8th Cir. 1996) ("Although an individual who is eligible for services under IDEA may also qualify for assistance under the Rehabilitation Act of 1973 . . . the school district is not free to choose which statute it prefers[.]"); *Moser v. Bret Harte Union High Sch. Dist.*, 366 F. Supp. 2d 944, 971 (E.D. Cal. 2005) ("A school has no leeway to substitute a 504 Plan for required IEP/IDEA services.").  At the hearing, District agreed that 504 accommodations could not supplant a school's obligations under the IDEA.

Because the District did not take steps to assess Student for special education services until January 10, 2018, despite being on notice of Student's disability as of September 19, 2017, Plaintiffs have necessarily shown that Student was deprived of a FAPE during this time period.  *See Timothy O.*, 822 F.3d at 1126 ("Because the school district failed to conduct the statutorily mandated assessment of 'all areas of suspected disability' it necessarily deprived [Student] of a free appropriate public education.").

Accordingly, Plaintiff's Motion is **GRANTED** and Defendant's Motion is **DENIED** with respect to the District's Child Find obligation.

### B.    Whether the District Failed to Assess and Offer Appropriate Post-Secondary Transition Services

Plaintiffs argue that the ALJ correctly found that the District failed to conduct an age-appropriate transition assessment, but incorrectly concluded that this failure was a harmless procedural violation not resulting in denial of a FAPE.  (P MSJ at 15).  Specifically, Plaintiffs contend that a failure to conduct a transition assessment

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-7965-MWF (SSx)                Date:  January 26, 2021
Title:        A.P. et al. v. Pasadena Unified School District

necessarily results in educational harm because it denies participation in the IEP
process.  (*Id.* at 16) (citing *Carrie I. ex rel. Greg I. v. Dep't of Educ., Hawaii*, 869 F.
Supp. 2d 1225, 1247 (D. Haw. 2012)).  The District disputes that a procedural violation
occurred because it presented evidence showing the District informally assessed
Student, but asserts that even if a procedural error did occur, the ALJ correctly
determined that there was no showing of educational harm because the IEP included
goals directed at Student's desire to be an actress.  (P MSJ Opp. at 16-17).

The IDEA and California law require that by the time a child with a disability
reaches the age of sixteen, the school must have an IEP in effect that includes
"appropriate measurable postsecondary goals based upon age appropriate transition
assessments related to training, education, employment, and where appropriate,
independent living skills."  20 U.S.C. § 1414(d)(1)(A)(i)(VIII)(aa); 34 C.F.R. §
300.320(b)(1); Cal. Educ. Code § 56345(a)(8).  The IEP must provide transition
services "needed to assist the child in reaching those goals."  20 U.S.C. §
1414(d)(1)(A)(i)(VIII)(bb); 34 C.F.R. § 300.320(b)(2); Cal. Educ. Code § 56345(a)(8).

Transition services must be

designed to be within a results-oriented process, that is focused on
improving the academic and functional achievement of the child with a
disability to facilitate the child's movement from school to post-school
activities, including postsecondary education, vocational education,
integrated employment (including supported employment), continuing and
adult education, adult services, independent living, or community
participation [and] [i]s based on the individual child's needs, taking into
account the child's strengths, preferences, and interests[.]

34 C.F.R. § 300.43(a)(1)-(2).

It is undisputed that the District did not formally assess Student for transitional
services.  (*Id.* at 15-16).  However, the District asserts that it conducted an informal

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-7965-MWF (SSx)                    Date:  January 26, 2021
Title:      A.P. et al. v. Pasadena Unified School District

assessment of Student, which suffices to satisfy its legal obligations.  (*Id.*).  This contention is belied by the ALJ's finding that the District presented no evidence to show that an informal assessment ever actually occurred.  (*See* ALJ Opinion ¶ 68 (AR at 709)).  The Court is unpersuaded by the District's attempt to challenge this finding. The evidence cited by the District — that Student had an in-class conversation with a teacher about her interest in television and film — falls far short of conducting even the most informal assessment "related to training, education, employment, and where appropriate, independent living skills," as required by the IDEA and California law. The Court therefore adopts the ALJ's factual finding that the District committed a procedural violation of the IDEA by failing to assess Student for transitional services.

The ALJ concluded that this procedural violation was harmless because the content of the individual transition plan included in Student's April 27, 2018 IEP was appropriate.  (*See* ALJ Opinion ¶¶ 69, 75 (AR at 709)) (citing *M.M. v. New York City Dept. of Education*, 655 Fed. App'x 868 (2d Cir. 2016))).

The ALJ applied the wrong standard.

Procedural violations of the IDEA are not harmless where "they seriously impair the parents' opportunity to participate in the IEP formulation process, result in the loss of educational opportunity for the child, or cause a deprivation of the child's educational benefits."  *Timothy O.*, 822 F.3d at 1124.  "A procedural fault rises to a denial of FAPE when a school fails to conduct proper assessments and then provides inadequate services."  *Carrie I.*, 869 F. Supp. 2d at 1247 (holding that district denied student a FAPE where it failed to conduct assessment for transition services, which constitutes both a lost educational opportunity and a denial of an opportunity to participate in the transition plan) (citing *Dracut Sch. Comm. v. Bureau of Special Educ. Appeals of the Massachusetts Dep't of Elementary & Secondary Educ.*, 737 F. Supp. 2d 35, 50 (D. Mass. 2010) (citing *N.B. v. Hellgate Elementary Sch. Dist.*, 541 F.3d 1202, 1210 (9th Cir. 2008))) (internal alterations omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-7965-MWF (SSx)                  Date:  January 26, 2021
Title:      A.P. et al. v. Pasadena Unified School District

The Court agrees with Plaintiffs that the District's violation was not harmless because it resulted in the loss of educational opportunity.  As the ALJ expressly noted, the plan did not include any goals with respect to independent living.  (*See* ALJ Opinion ¶ 70 (AR at 710)).  The ALJ dismissed this omission as harmless after concluding that Student did not have deficits in adaptive or living skills, "except during bouts of serious depression or anxiety, when she temporarily neglected her grooming." (*Id.*).  This conclusion deserves no deference because it demonstrates a patent failure to carefully and impartially consider of all the evidence.  *See Ojai*, 4 F.3d at 1476.

For example, Dr. Leach recounted the details of a depressive episode which Student had suffered the previous year in ninth grade:

I believe at that point [Student] was in bed for about three weeks.  She wasn't eating.  She was nude most of the time.  There was, at one point, where she had menstruated and hadn't used anything and bled on her sheets and laid there for several days at a time.  She was so depressed that she wasn't even taking care of any activities of daily living.

(AR at 1084).  Student's inability to care for herself during depressive episodes had been substantially more debilitating than the occasional and temporary "neglect of grooming" that the ALJ identified.

The District's failure to assess Student for transition services related to these deficits resulted in the loss of opportunity to be considered for benefits to which she may have been entitled.  *See Timothy O.*, 822 F.3d at 1124 ("to succeed on a claim that a child was denied a free appropriate public education because of a procedural error, the individual need not definitively show that his educational placement would have been different without the error") (citation omitted).  At the hearing, the District highlighted the difficulty in fashioning a remedy for the loss, but did not dispute that Student lost the opportunity to be considered for benefits geared toward individual living skills.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-7965-MWF (SSx)                    Date:  January 26, 2021
Title:        A.P. et al. v. Pasadena Unified School District

Accordingly, Plaintiffs' Motion is **GRANTED** and Defendant's Motion is **DENIED** with respect to the District's failure to assess Student for transition services.

### C.  <u>Whether the District Failed to Make a Proper Offer of Placement</u>

With respect to the District's offer of placement, Plaintiffs do not contend that the two specific schools discussed, Hillside and STEM-3, were inappropriate placements or incapable of addressing Student's unique needs.  Rather, Plaintiffs argue that the District precluded their meaningful participation in and informed consent to the IEP by offering two distinct school placements.  (P MSJ at 20-24).  Plaintiffs assert that the District was required to take the final step to identify a formal, specific placement.  (*Id.* at 20) (citing *Union Sch. Dist. v. Smith* 15 F.3d 1519, 1526 (9th Cir. 1994)).  The District responds that Plaintiffs have misstated the law, as "the IDEA does not procedurally require every IEP to identify the anticipated school where special education services will be delivered."  (P MSJ Opp. at 18) (quoting *Rachel H. v. Dep't of Educ. Hawaii*, 868 F.3d 1085, 1093 (9th Cir. 2017)).

The District is correct that "an educational agency does not commit a per se violation of the IDEA by not specifying the anticipated school where special education services will be delivered within a child's IEP."  *Rachel H.*, 868 F.3d at 1093.  Plaintiffs are also correct that the failure to identify a particular school can result in a violation of the IDEA in certain circumstances.  *Id.*

Assuming without deciding that the District committed a procedural violation, Plaintiffs' claim fails because any such violation was harmless.  Parents were not deprived of the opportunity to participate meaningfully in the placement process.

In support of their claim, Plaintiffs rely on cases that are distinguishable in critical respects.  (*See* P MSJ at 20-24).  This was not a situation in which Parents were "left to fend for themselves to determine whether any private day school in their area — including the five [the district] applied to — would be a satisfactory fit."  *A.K. ex rel. J.K. v. Alexandria City Sch. Bd.*, 484 F.3d 672, 681 (4th Cir. 2007).  Rather, as the ALJ found, the District identified two specific options it believed could accommodate

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-7965-MWF (SSx)                    Date:  January 26, 2021
Title:        A.P. et al. v. Pasadena Unified School District

Student's needs, discussed these options at the IEP Meeting, and helped facilitate a tour of these options so that Parents could learn more about their specific programs and offerings.  (AR at 605-606, 1366); (ALJ Opinion ¶ 84 (AR at 713)).  In addition, the District NPS coordinator shared information about these two schools with Parents at the IEP Meeting.  (AR at 1368-1376, 1396, 1403).

It was not the situation here that the placement offer failed to identify any specific option or was so unclear that it prevented Parents from being able to determine whether the placement would be a satisfactory fit for Student.  *See Rachel H.*, 868 F.3d at 1092 (explaining that the failure to provide the name of a specific placement can result in denial of a FAPE where, in the absence of this information, parents are unable "to evaluate whether a proposed IEP satisfies the IDEA because of a particular special education need caused by a child's disability"); *Glendale Unified Sch. Dist. v. Almasi*, 122 F. Supp. 2d 1093, 1108 (C.D. Cal. 2000) (holding that the district's offer of multiple placement options resulted in a denial of a FAPE because it "failed to articulate a clear, coherent offer which [the parent] reasonably could evaluate and decide whether to accept or appeal").  At the hearing, Plaintiffs argued that schools place an unfair burden on parents where they offer multiple placement options but failed to express in what way ***specifically*** the placement offer here denied Parents of the opportunity to participate.

Instead, the evidence supports a finding that Parents understood Student's two placements options and, without difficulty and with the District's support, were able to acquire the necessary information to assess the appropriateness of these options.  (*See* AR at 853-954, 859-860).  Although Parents ultimately rejected the IEP after determining that neither Hillside nor STEM-3 was a satisfactory fit for Student's needs, they arrived at that decision after meaningful participation.  Indeed, Parents' May 14, 2018 letter to the District expressed dissatisfaction with -- not confusion about -- Student's placement options.  (AR at 392).

Accordingly, the Court adopts the ALJ's determination that the District did not deprive Student of a FAPE by failing to make one specific offer of placement.  The District's Motion is **GRANTED** and Plaintiffs' Motion is **DENIED** as to this issue.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-7965-MWF (SSx)                    Date:  January 26, 2021
Title:      A.P. et al. v. Pasadena Unified School District

### D.    Relief

District courts have broad discretion to craft relief for violations of the IDEA.
*Ashland Sch. Dist. v. Parents of Student E.H.*, 587 F.3d 1175, 1183 (9th Cir. 2009).
"[W]here Parents seek reimbursement for private school expenses, they 'are entitled to
reimbursement only if a federal court concludes both that the public placement violated
IDEA and that the private school placement was proper under the Act.'"  *Id.* (quoting
*Florence County Sch. Dist. Four v. Carter ex rel. Carter*, 510 U.S. 7, 15 (1993)).

As noted above, the District violated the IDEA by failing to take steps to
evaluate Student for special education services until January 2018 and by failing to
assess Student for post-secondary transition services.  The Court also concludes that
Bridges was a proper placement under the IDEA, as it was specifically designed to
address the educational and social-emotional needs of twice-exceptional children like
Student, who demonstrated significant improvement after her enrollment.  (*See* AR at
397-409; 1009; 1014-15).

At the hearing, Plaintiffs argued that the Court should reimburse Parents for
costs spent in placing Student at Bridges, including $71,579 in tuition costs, $4,257 in
mileage costs, $18,283 for therapeutic counseling support services, and $5,785 in
transition support services.  Plaintiffs neither specified the time period over which
Parents incurred these costs nor pointed to evidence documenting and substantiating
these costs.  The District argued that any reimbursement should be limited to costs
incurred before the District made its placement offer on April 28, 2018, as both parties
agree that that placement offer was substantively appropriate.

The Court agrees with the District that any remedy must account for the fact that
the District made an appropriate placement offer on April 28, 2018, which Parents
ultimately chose to reject.  However, the Court is not currently in a position to craft an
appropriate remedy because Plaintiffs did not lodge a detailed timeline and accounting
of the costs Parents incurred by placing Student at Bridges.  Accordingly, the Court
defers ruling on this issue until it receives the parties' supplemental briefing.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 19-7965-MWF (SSx)                    Date:  January 26, 2021**
Title:       A.P. et al. v. Pasadena Unified School District

## IV.  **CONCLUSION**

For the reasons stated above, Plaintiffs' Motion is **GRANTED** and the District's Motion is **DENIED** as to the Child Find and post-secondary assessment issues. Plaintiff's Motion is **DENIED** and the District's Motion is **GRANTED** as to the placement offer issue.  The Court defers ruling on the Motions with respect to reimbursement.

Plaintiffs are **ORDERED** to file a supplemental brief on or before **March 1, 2021**, advocating for an appropriate reimbursement amount in accordance with this Order's factual findings and legal conclusions.  In support of Plaintiffs' requested reimbursement amount, Plaintiffs must lodge a detailed timeline and accounting of the costs that Parents incurred by placing Student at Bridges.  If Plaintiffs intend to request attorneys' fees and costs, they must do so in the supplemental brief.  The brief should be noticed as a regular motion in accordance with the Local Rules and the Court's standing orders.  As a result, the District will have an opportunity to oppose Plaintiffs' requests for reimbursement and attorneys' fees.  Failure to file the supplemental brief on or before March 1, 2021, without leave of court will result in the denial of Plaintiff's Motion with respect to reimbursement.

The Final Pretrial Conference on February 22, 2021, and the Court Trial on March 9, 2021, are **VACATED**.

IT IS SO ORDERED.